### A. & E. PITMAN MFG. CO., Inc., v. PITMAN et al.

District Court, D. Massachusetts. February 6, 1930.

No. 3083.

Charles D. Woodberry and Roberts, Cushman & Woodberry, all of Boston, Mass., for plaintiff.

Franklin F. Phillips, of Boston, Mass., for defendants.

MORTON, District Judge. This is a suit for the infringement of patent No. 1,264,740 to G. L. Young on frying apparatus, dated April 30, 1918. The claims in suit are the first and fourth. The case was heard in open court on oral and documentary evidence in connection with various exhibits.

The art to which the patent relates is that of frying food in deep fat. It had long been known that the fat used for this purpose became contaminated by the odors and flavors of the food cooked in it, and for this reason, after a certain time, the fat had to be discarded. Young discovered that the cause of the contamination was not, as had been supposed, the food itself, but the carbonization of the débris which fell from it. This débris, consisting of broken particles of the food, or the meal or crumbs in which it had been dredged, settles to the bottom of the kettle. There it is exposed to the extreme heat of the fire and becomes carbonized. In so changing it transfers its taste and odor to the surrounding fat. If carbonization of the débris can be prevented, the fat can be used for a relatively long time.

Young applied his discovery to the practical art of frying food by means of the apparatus shown in his patent. Essentially it consisted of a "container" or kettle having a slanting bottom, at the center of which is a "depending extension"; i. e., a well or sump. The food was held in a wire basket suspended in the hot fat in the upper part of the container—an old device. Heat was applied to the slanting bottom of the kettle considerably above the well, which remained too cool to carbonize the particles falling into it; the evidence is that the hand can be borne on the well while the kettle is in use for cooking. The Young apparatus effected a large saving in the use of fat.

Young's patent is concededly an absolute pioneer. No prior patents of any kind were cited against it in the Office; and it was allowed exactly as it was filed except for clerical corrections—the only instance of the kind which has ever come to my attention.

The managers of the defendant company knew about the Young kettle and had worked on it in its early stages. They were familiar with the principle involved and with the patent. In the defendants' apparatus an old-fashioned kettle is used having a rounded bottom of the usual sort. Into it is inserted an inverted cone of sheet metal, the point of which has been cut off. The top of this cone fits snugly against the sides of the kettle. The truncated end of the cone,

as originally made, was partly open and rested in the drainage pipe in the bottom of the kettle. In the form now sold, this end of the cone is closed by a removable plug while the kettle is in use. The drainage pipe was and is closed by a valve. The cone has two rings of circulation holes screened by wire netting sufficiently fine to prevent débris from passing through them—one of them being near the top of the cone; the other, near the bottom. The burners used are of the circular, or ring, type—gas or gasoline being the fuel—having diameters of from 6 inches to 9 inches. The food is suspended in the cone in a wire basket, as in the plaintiff's device.

In the operation of the defendant's kettle the débris falls to the bottom of the cone and is retained there. When no plug was used, it settled into the drainage outlet as far as the valve. The walls of the kettle and the fat in the lower part of it outside the cone protect the débris from extreme heat; and it does not char. There is a circulation of the heated fat; it rises along the sides of the kettle, and passes into the cone through the upper set of holes and out through the lower set. Before plugs were used, after the drainage pipe had become filled with débris, some of the finer particles were apt to work out between the bottom of the cone and the kettle. The defendants testify that such particles carbonized. The plaintiffs contradict this testimony; and a question of fact is raised on which, without attempting to discuss the evidence in detail, I content myself with saying that in my judgment the defendants are right.

That the defendants are making use of Young's discovery is obvious. The discovery itself was unpatentable—like that of Morse that an electric circuit could be used for telegraphing (O'Reilly v. Morse, 15 How. 62, at page 112 et. seq., 14 L. Ed. 601) or Morton's of the anæsthetic properties of ether—and the defendants had the right to use it, except in the particular manner which Young had patented. The question is whether the defendants' apparatus embodies the inventive idea of the Young patent, as distinguished from the discovery on which the patent is based.

All the elements of the claims in suit are concededly found in the defendants' device, except the "depending extension" to the container or kettle. The case turns on whether this element or its equivalent is present. As the patent is a pioneer, the plaintiffs are entitled to the widest range of equivalents. The plaintiffs make three contentions: First, that that part of the defendants' kettle which is below the line of heat constitutes a depending extension within the meaning of the claims; second, that the upper part of the drainage pipe constitutes such an extension; and, third, that the lower part of the cone, below where the heat of the burner strikes the outside of the kettle, constitutes a depending extension.

As to the first: The rounding bottom of the kettle is slightly below the line where the heat from the ring burner impinges upon the sides, which is the line with reference to which the depending extension is determined. If the heat is applied above the bottom of the kettle in such a way as to leave the center of the bottom too cool to carbonize débris, the principle of the patent would be used; and it would be infringed. On the other hand, if the heating appliance is so arranged that the entire bottom of the kettle is at charring temperature, there would clearly be no depending extension of it within the meaning of the patent, even though the rounded bottom of the kettle came below where the flame impinged. The defendants' apparatus is of the latter type. As I have found above, the entire bottom of the kettle is hot enough to carbonize débris. It follows that this contention is not sustained.

As to the second: It is admitted that drainage pipes in cooking kettles were old. A drainage pipe of large size, in which the valve was at some distance below the kettle, would undoubtedly afford a cool trap for the débris and constitute a "depending extension" within the claims in suit. In the defendants' kettles, however, the pipe is small and the valve close to the bottom of the kettle. The capacity of the drainage pipe above the valve is so slight as to amount to nothing, practically speaking, as a trap for débris. Moreover, there is nothing novel in the construction of the defendants' kettle at this point. This contention also fails.

As to the third contention: The Young device plainly contemplates a kettle in which heat is applied above the lowest part of it, so that the depending portion always remains below carbonizing temperature. The word "depending," as used in the patent means, below the fire. The interior of the lower part of the cone is not cooled on this principle. Part of it is below the line where the heat strikes the kettle; but, as above stated, the débris in it is protected from

extreme heat by the interposed fat and the walls of the kettle, and the circulation of the heated fat brings the cooler fat into the bottom of the cone. It is something like a double boiler provided with circulation openings into the inner vessel. Even under the most liberal construction—and this pioneer patent is entitled to it—I do not think that this arrangement can be regarded as a "depending extension" of the "cooking medium container," as specified in the claims.

I am therefore of opinion that the defendants' device does not infringe either of the claims in suit; and on all the evidence I so find. The defendants have applied Young's discovery by an apparatus involving a different principle from that which he invented. In the light of Young's discovery, the problem was to keep the débris from contact with the hot parts of the kettle. It does not seem to me that Young's solution of it by the depending well furnishes any suggestion for the defendants' solution of it by the inverted cone fitting into a kettle of the common type and provided with screened circulation holes, so that the fat might circulate through it while the débris would still be retained away from extreme heat.

Bill dismissed.